UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA POTTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:09-CV-64 (CEJ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On June 1, 2006, plaintiff Patricia Potts[1] filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., §§ 1381 et seq., and an application for supplemental security income disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1391 et seq. (Tr. 85-90). Plaintiff claimed disability due to depression, with an onset date of October 10, 2005. (Tr. 112). The applications were initially denied by defendant. (Tr. 57). Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on July 16, 2008. (Tr. 22). Plaintiff testified at the hearing in response to questions posed by the ALJ and by plaintiff's counsel. (Tr. 22-45). The ALJ also heard testimony from Delores Gonzales, a vocational expert. (Tr. 45-53).

---

[1]Plaintiff is referred to as "Patricia J. Henderson" in her application for disability benefits, and in some of the medical records.

On August 19, 2008, the ALJ found that plaintiff was not disabled and denied her claims for benefits. (Tr. 8-16). Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 17-21). On November 17, 2008, the Appeals Council denied plaintiff's request. (Tr. 1). Therefore, the ALJ's determination denying plaintiff benefits stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

Plaintiff was born on December 26, 1964. (Tr. 85). At the time of the hearing, plaintiff lived in an apartment with her thirteen year old son and a friend. (Tr. 32). Plaintiff was married, but was separated from her husband. (Tr. 35). She was the primary caretaker for her son. (Tr. 33).

Plaintiff is a high school graduate who subsequently completed a Certified Nurse Assistant program. (Tr. 28). At the time of the hearing, plaintiff was working part-time as a caretaker/sitter for an elderly woman, which she had been doing since 2006. (Tr. 28). She worked approximately four days per week, for two and a half hours each day. (Tr. 28, 40). She was earning $9.75 per hour. (Tr. 40). Plaintiff testified that she was unable to work longer hours and often did not show up because she could not get herself out of bed. (Tr. 42-43).

Plaintiff's work history includes work as an accounting technician (May 1998-May 1999), a clerical worker (1999-2000), a claims processor (October 2000-July 2001), a collector for a department store (January 2002-August 2002), a nurse's assistant at a nursing home (April 2003), a certified nurse assistant (January 2004-October 2005), a sandwich maker (February 2006-April 2006) and an inventory clerk (April 2006). (Tr. 113). Her longest position was as a certified nurse assistant. (Tr. 113). In that position, she was responsible for dressing, feeding and helping patients with their daily needs. (Tr. 113). She did not have supervisory duties. (Tr. 114).

When plaintiff is not elder-sitting, her typical day involves watching a lot of television and lying around all day. (Tr. 38, 120). Plaintiff describes herself as lazy. (Tr. 38). While her ex-husband stated that plaintiff was unable to cook, plaintiff testified that she is capable of cooking for herself and her son. (Tr. 38, 122). Plaintiff is also able to do laundry and other chores around the house. (Tr. 38). Plaintiff had no difficulties with personal care or hygiene, although she often found it difficult to get herself out of bed to shower. (Tr. 38, 121).

Plaintiff described her depression as resulting from a "mixture of things". (Tr. 33). Plaintiff testified that she feels that she has too much going on. (Tr. 33). Plaintiff testified that her sister had committed suicide and her other sister was now having mental problems. (Tr. 31). She stated that everything "just came together" around October 10, 2005---her alleged onset date. (Tr. 31-32).

Plaintiff testified that she has sleep problems and frequently experiences a loss of appetite. (Tr. 34). Plaintiff did not feel comfortable being away from her home. (Tr. 41). When plaintiff is away from her home, she feels as if she is leaving a "safety zone." (Tr. 42). Nevertheless, plaintiff did not think that she could stay home all day long. (Tr. 42). Because of depression, plaintiff has good days and bad days, but she testified that the bad days outnumber the good days. (Tr. 34).

The ALJ heard testimony from Delores Gonzales, a vocational expert, who testified that a hypothetical person with plaintiff's limitations would be able to perform other work existing in significant numbers in the economy. (Tr. 48-52).

### III. Medical Records

Plaintiff was seen by Susan Minchin, M.D. on April 25, 2003. (Tr. 145). She was diagnosed with insomnia and depression. (Tr. 145). Plaintiff did not visit Dr. Minchin again until September 24, 2007. (Tr. 169).

Plaintiff presented to Garry M. Vickar, M.D. on December 8, 2004 with complaints of sleep problems and a need for counseling. (Tr. 142). Plaintiff stated that she could not sleep and was thinking too much. (Tr. 142). Plaintiff reported that she cried a lot. (Tr. 143). Plaintiff was diagnosed with situational depression[2] and assigned an initial Global Assessment of Functioning ("GAF")[3] score of 60.[4] (Tr. 143). Plaintiff was scheduled for a follow up appointment with Dr. Vickar in February 2005, but did not show up. (Tr. 144).

On August 1, 2006, plaintiff was seen by David Lipsitz, Ph.D. (Tr. 150). Plaintiff's chief complaint was depression. (Tr. 150). Plaintiff stated the she did not like going places and preferred to stay home. (Tr. 150). Plaintiff reported a poor appetite and stated that she would occasionally "binge." (Tr. 150). Plaintiff also told Dr. Lipsitz that she had problems sleeping, stemming from her childhood memory of being locked in a closet and beaten by her father. (Tr. 150). Plaintiff stated that she

---

[2]Major depression is a mental disorder characterized by sustained depression of mood, sleep and appetite disturbances, and feelings of worthlessness, guilt, and hopelessness. PDR Medical Dictionary 478 (2d. ed. 2000).

[3]The GAF is determined on a scale of 1 to 100 and reflects the clinician's judgment of an individual's overall level of functioning, taking into consideration psychological, social, and occupational functioning. Impairment in functioning due to physical or environmental limitations are not considered. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders - Fourth Edition, Text Revision 32-33 (4th ed. 2000).

[4]A GAF of 51-60 corresponds with "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR difficulty in social, occupational or school functioning (E.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders - Fourth Edition, Text Revision 34 (4th ed. 2000).

was healthy physically, but had a diminished energy level. (Tr. 151). Plaintiff told Dr. Lipsitz that her husband had "cut off her insurance" and she was unable to continue seeing the doctor she had been seeing. (Tr. 151).

Dr. Lipsitz described plaintiff's affect as bright and her mood as depressed. (Tr. 152). Plaintiff exhibited fair concentration, judgment and insight. (Tr. 152). Her thought processes were preoccupied with fears and anxieties. (Tr. 152). Plaintiff was pleasant appearing and displayed a good attitude. (Tr. 150). Dr. Lipsitz described plaintiff as cooperative during her session. (Tr. 150). Plaintiff's diagnoses were major depression and anxiety disorder. (Tr. 152). Dr. Lipsitz assigned plaintiff a GAF score of 50.[5] (Tr. 152). Plaintiff was not taking any medication at the time, and Dr. Lipsitz felt that "medication could help alleviate the anxiety and the mood disturbance." (Tr. 151-52).

A mental residual functional capacity assessment was made on September 5, 2006. (Tr. 165). Moderate limitations were noted in plaintiff's ability to maintain attention for extended periods of time, her ability to complete a normal workday without interruptions, her ability to interact with the public, and her ability to respond to changes in work environment. (Tr. 165-66). No marked limitations were noted. (Tr. 165-66).

Plaintiff's second visit with Dr. Minchin was on September 24, 2007. (Tr. 169). Plaintiff told Dr. Minchin that she felt better when on medication. (Tr. 169). Plaintiff's sleep was still interrupted and her appetite was poor. (Tr. 169). Plaintiff's affect was restricted and anxious. (Tr. 169). Dr. Minchin diagnosed plaintiff with a "relapse" of

---

[5]A GAF of 41-50 corresponds with "serious symptoms OR any serious impairment in social occupational, or school functioning." American Psychiatric Association, <u>Diagnostic & Statistical Manual of Mental Disorders - Fourth Edition, Text Revision</u> 34 (4th ed. 2000).

–5–

her depression. (Tr. 169). Plaintiff was prescribed antidepressant medication and was provided with a few samples. (Tr. 169).

On October 29, 2007, plaintiff saw Janice Clark, a licensed social worker. (Tr. 173). Plaintiff reported that her depression was not improving. (Tr. 173). Plaintiff still did not feel comfortable leaving her home. (Tr. 173). Plaintiff's mood was worried and irritable. (Tr. 174). Her affect was guarded. (Tr. 174). Plaintiff denied psychotic symptoms. (Tr. 174). Plaintiff's behavior and cooperation were "okay." (Tr. 174). Plaintiff's diagnosis was major depressive disorder. (Tr. 174). Her GAF score was assessed at 43. (Tr. 174).

Plaintiff was scheduled for another appointment with Ms. Clark on November 5, 2007. (Tr. 178). She did not show up, but later called and reported that she had been unable to get a ride. (Tr. 178). Her appointment was rescheduled for November 20, 2007. (Tr. 178). Plaintiff did not show up for this appointment, and no explanation was given. (Tr. 178).

## IV. The ALJ's Decision

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since October 10, 2005, the alleged onset date.

3. The claimant has the "severe" impairments of major depressive disorder and generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. However, the claimant's nonexertional limitations

          include performing simple tasks only which require no more than occasional contact with the general public and co-workers.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on December 26, 1964 and was 40 years odl, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2005 through the date of this decision.

## V. Discussion

To be eligible for disability insurance benefits, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382 (a)(3)(A) (2000). An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner employs a five-step evaluation process, "under which the ALJ must make specific findings." Nimick v. Secretary of Health and Human Serv., 887 F.2d 864 (8th Cir. 1989). The ALJ first determines whether the claimant is engaged in substantial gainful activity. If the claimant is so engaged, she is not disabled. Second, the ALJ determines whether the claimant has a "severe impairment," meaning one which significantly limits her ability to do basic work activities. If the claimant's impairment is not severe, she is not disabled. Third, the ALJ determines whether the claimant's impairment meets or is equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant's impairment is, or equals, one of the listed impairments, she is disabled under the Act. Fourth, the ALJ determines whether the claimant can perform her past relevant work. If the claimant can, she is not disabled. Fifth, if the claimant cannot perform her past relevant work, the ALJ determines whether she is capable of performing any other work in the national economy. If the claimant is not, she is disabled. See 20 C.F.R. §§ 404.1520, 416.920 (2002); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

A.  **Standard of Review**

The Court must affirm the Commissioner's decision, "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). The Court may not reverse merely because the evidence could support a contrary outcome. Estes, 275 F.3d at 724.

In determining whether the Commissioner's decision is supported by substantial evidence, the Court reviews the entire administrative record, considering:

1. the ALJ's credibility findings;

2. the plaintiff's vocational factors;

3. the medical evidence;

4. the plaintiff's subjective complaints relating to both exertional and nonexertional impairments;

5. third-party corroboration of the plaintiff's impairments; and

6. when required, vocational expert testimony based on proper hypothetical questions, setting forth the claimant's impairment.

See Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

The Court must consider any evidence that detracts from the Commissioner's decision. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

B. **Plaintiff's Allegations of Error**

Plaintiff contends that the ALJ failed to properly consider her residual functional capacity. Specifically, plaintiff contends that the ALJ improperly discredited all of the medical evidence by finding that the medical professionals relied solely upon plaintiff's subjective complaints and not on objective medical evidence. Plaintiff claims that the ALJ's residual functional capacity determination is not even supported by "some evidence". Plaintiff also claims that the vocational expert's testimony was based on a flawed residual functional capacity determination, and accordingly, is of little weight.

### 1. Residual Functional Capacity

It is the duty of the ALJ to determine plaintiff's RFC after considering all relevant evidence. See Lauer v. Apfel, 245 F.3d 700, 703-704 (8th Cir. 2001). The RFC of a claimant is "the most that she [is] capable of doing despite the combined effects of both her severe and non-severe medically determinable impairments." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008). Although the ALJ must consider all relevant evidence, "[a] claimant's residual functional capacity is a medical question." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). Thus, at least "some medical evidence" must support the residual functional conclusions of the ALJ. See Lauer, 245 F.3d at 704.

The ALJ found that plaintiff retained the ability to perform only simple tasks which require no more than occasional contact with the general public and co-workers. (Tr. 12). In making this determination, the ALJ relied upon the treatment notes of plaintiff's physician, consultative examiner, and therapist, but noted:

> It is apparent that the consultative examiner and the claimant's doctor and therapist relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.

(Tr. 14).

The ALJ found that plaintiff's subjective complaints were not entirely credible primarily because of what the ALJ perceived to be inconsistent statements made by plaintiff throughout the record and at the hearing. The ALJ noted that plaintiff claimed, in her disability report, that she was having suicidal thoughts but subsequently denied suicidal thoughts to Ms. Clark. (Tr. 14). The ALJ also considered plaintiff's testimony

at the hearing that she was seeing Dr. Minchin "off and on," when the records show that plaintiff saw Dr. Minchin on only two occasions over a four-year period. (Tr. 14). The ALJ also noted that plaintiff told Ms. Clark she had not left her home since 2004, when she had actually been working four days a week as an elder-sitter. (Tr. 14). Based on these inconsistencies, the ALJ found that plaintiff's subjective complaints were not entirely credible.

The Court first examines the ALJ's residual functional determination. Plaintiff contends that the RFC determination is not supported by "some medical evidence". This issue is complicated by the fact that plaintiff's medical records consist only of a small handful of office visits. Plaintiff saw her physician, Dr. Minchin, only twice---once in 2003 and again in 2007. (Tr. 145, 169). She was seen by every other medical professional only once: Dr. Vickar in 2004, a psychologist (Dr. Lipsitz) in 2006, and a licensed therapist (Ms. Clark) in 2007. Together with a September 2006 report by the state agency psychological consultant, "P. Stuve," the above medical notes constitute the entire medical record to be examined in this case.

The ALJ discounted many of the opinions of Dr. Minchin, Dr. Vickar, and Ms. Clark. None of these medical professionals had a sufficient level of involvement in plaintiff's treatment to be considered a "treating physician", whose opinion would ordinarily be entitled to substantial weight. See Wright v. Astrue, 2009 WL 102692 at *5 (W.D. Mo. 2009)(physicians who saw plaintiff on only one or two occasions had such limited contact and involvement in plaintiff's treatment that they should not be considered treating physicians). Therefore, the ALJ was entitled to discount their opinions insofar as they were inconsistent with the record as a whole.

In formulating plaintiff's mental RFC, the ALJ relied mostly upon the report of the state agency psychologist P. Stuve and, to a lesser extent, the report of Dr. Lipsitz.

While Dr. Lipsitz opined that plaintiff was "certainly in need of ongoing psychiatric treatment combining medication with individual psychotherapy," he believed that "medication could help alleviate the anxiety and the mood disturbance." (Tr. 152). Likewise, psychologist Stuve noted that "[Plaintiff] would not be able to work at present, but she has not followed through with treatment recommendations for her illness." (Tr. 189). With appropriate treatment, Stuve noted, plaintiff's depression "would be expected to improve." (Tr. 189). Assuming plaintiff received appropriate treatment, Stuve opined that plaintiff would still be moderately limited in her ability to interact with the general public, her ability to concentrate, and her ability to adapt to changes in the workplace. (Tr. 167). Stuve noted that plaintiff would be capable of interacting adequately with her co-workers. (Tr. 167). These findings adequately support the ALJ's residual functional determination that plaintiff was limited to work involving only simple tasks with no more than occasional contact with the public and her co-workers.

The opinions of psychologist Stuve and Dr. Lipsitz that plaintiff's condition would improve with treatment is substantially supported by other evidence in the record. In her testimony before the ALJ, plaintiff stated that the medications were helping. (Tr. 44). Treatment notes indicate that plaintiff also told Dr. Minchin that her medication was helping her stay calm. (Tr. 169). In her disability report, plaintiff also indicated that "[t]he medicine helps me." (Tr. 112). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

Further, throughout the meager medical record, it was noted that plaintiff was not taking medication or undergoing consistent mental health treatment. (Tr. 112, 151, 189). This lack of sustained medical treatment ordinarily suggests that plaintiff's

condition does not rise to the level of disabling.  See Novotny v. Chater, 72 F.3d 669, 670 (8th Cir. 1995).  Indeed, plaintiff was only seen by a medical professional for her depression once in 2003, once in 2004, once in 2006 and twice in 2007.  Plaintiff did not receive any mental health treatment in 2005, the year she alleges as the onset of her disability.  There is no record of plaintiff requiring emergency treatment for her impairment at any time.  Further, plaintiff failed to show up to several of her appointments.  The fact that plaintiff has not sought consistent medical treatment for her depression militates in favor of the ALJ's finding that she is not disabled.

While the record does contain statements regarding plaintiff's insurance and financial situation, it is not clear that plaintiff refused treatment because she was unable to afford it.  Further, even it were clear that plaintiff struggled to afford her treatment, there is no evidence in the record that plaintiff sought free treatment or medicine samples.[6]  Indeed, healthcare costs cannot explain why plaintiff missed several appointments when records reflect she was billed for those missed appointments anyway.  Plaintiff has simply not attempted to obtain consistent treatment for her depression.  This indicates that her symptoms are not as severe or ongoing as she alleges.

Plaintiff contends that the ALJ erred by failing to fully develop the record.  The Court disagrees.  The lack of objective medical evidence available in this matter is not attributable to any fault on the part of the ALJ.  The reason that the medical evidence is scant is because plaintiff has not sought extensive medical treatment for her alleged disability.  The ALJ considered all of the existing medical records relating to plaintiff's treatment.

---

[6]Plaintiff did receive samples of medication from Dr. Minchin in September 2007.  (Tr. 169).  However, plaintiff did not actively seek additional samples from Dr. Minchin or any other medical professional.

The Court concludes that the ALJ properly determined plaintiff's mental residual functional capacity. Based on the record as a whole, substantial evidence supports the ALJ's finding that plaintiff could only perform simple tasks which require no more than occasional contact with the general public and co-workers.

### 2. Vocational Expert Testimony

Plaintiff argues that the vocational expert's testimony was based on a flawed RFC determination. Because the Court found that the ALJ's RFC determination was supported by substantial evidence, it was proper for the vocational expert to rely on that RFC in her testimony. The ALJ properly relied upon her testimony as substantial evidence that plaintiff could perform other work existing in the national economy. Therefore, the ALJ correctly determined that plaintiff was not disabled within the meaning of the Social Security Act.

## VI. Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision that plaintiff is not disabled is supported by substantial evidence in the record as a whole. Therefore, plaintiff is not entitled to relief.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in her complaint [#1] and her brief in support of complaint [#13] is **denied**.

A separate judgment in accordance with this order will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT COURT

Dated this 8th day of March, 2010.